The appellant, Mark Anthony Hurley, appeals from his convictions for rape in the first degree, sodomy in the first degree, and unlawful imprisonment in the second degree. He was sentenced as a habitual offender to life imprisonment on the rape and sodomy convictions, and to 90 days' imprisonment on the unlawful-imprisonment conviction, with the sentences to run concurrently.
The evidence adduced at trial tended to show the following: The victim testified that in the early morning hours on September 18, 2003, she was working her second night as a dancer at Hotskee's Lounge in Littleville. As part of her job, she was required to dance in a bikini or bra and panties for tips and to persuade patrons to buy her at least six non-alcoholic drinks. She would also perform lap dances for customers, one-on-one personal dances performed in a back room. She testified that her shift had begun on the evening of September 17, 2003, and that it was not a busy night at the lounge. She testified that Hurley entered the club at approximately 10:00 p.m. Following her dance on the stage, Hurley tipped her, bought her some drinks, and they talked for about an hour and a half. She asked Hurley if she could perform a lap dance for him, and he agreed. She testified that she performed for him for one four- or five-minute song. During this time, she said, Hurley was respectful and did nothing inappropriate. That dance was the last one of the night for the victim. She testified that she went into the dressing room, changed clothes, and prepared to go home. As she was leaving through the front door. Hurley was waiting for her and asked her if he could walk her to her car. Because he had been *Page 80 
a "perfect gentlemen" throughout the night, she agreed to let him walk her to her car. As they were walking to her car, she assumed Hurley had stopped under a breezeway, because he was no longer walking next to her. She testified that she got in her car, buckled her seatbelt, and began lighting a cigarette, when the passenger door opened. Hurley got into the car, and told the victim to "shut up." She testified that Hurley hit her twice in the head and told her to "shut up and drive." Hurley directed her to drive and pull into "what looked like it used to be a driveway" leading to an abandoned house.
Hurley instructed the victim to turn off the car's ignition and lights. He then placed her head in a "headlock," exposed his genitals, and forced her to perform oral sex on him. He then ordered her to remove her pants and underwear, pulled her on top of him while he was in the passenger seat, and forced her to have sexual intercourse with him. Although the victim continued to tell him "no," and that she needed to go home to her baby, he held onto her to prevent her from leaving the car. Following the rape, Hurley smoked a cigarette and allowed the victim to do so as well. Before she finished her cigarette, however, Hurley again forced her to perform oral sex and to have sexual intercourse with him a second time. She testified that they engaged in conversation and smoked another cigarette and that Hurley stepped out of the vehicle with his back to the victim to "use the restroom." The victim testified that she was too scared to start her vehicle. Hurley turned around and told the victim that she could leave, but that she better not tell anyone about the incident, because he would be back at Hotskee's. The victim testified that she pulled onto the main highway and was speeding toward the Littleville Police Department, when she was pulled over by an officer of the Russellville Police Department. After she explained that she had been raped, the officer escorted her to the nearest hospital.
The victim identified Hurley from a photographic lineup, as the perpetrator of the crimes against her. Evidence was presented indicating that shortly after the incident occurred, police found Hurley sleeping on the porch of the abandoned home where the rape and sodomy had taken place. When he saw the police, Hurley immediately rolled over and put his hands behind his back to be handcuffed. He admitted that he had been at Hotskee's lounge that night. Evidence was also presented indicating that the DNA profile, taken from Hurley after his arrest, matched that taken from the vaginal swabs from the rape kit analysis performed on the victim on the night of the incident.
Hurley contends that the trial court erred in allowing the State to introduce evidence during its case-in-chief of a prior crime he had committed, specifically, a conviction in 2000 for first-degree rape.
Before trial, Hurley made a motion in limine to prevent the State from introducing evidence of his prior conviction for rape, as well as any details surrounding the crime, pursuant to Rule 404(a), Ala. R. Evid. He also argued that the State failed to provide him with reasonable notice of its intent to introduce evidence of prior bad acts, pursuant to Rule 404(b), Ala. R. Evid.
A hearing was conducted on the motion, at which Hurley argued the same grounds contained in his motion. The State responded with the argument that evidence of the prior rape conviction was probative of Hurley's motive and was also evidence indicating that the victim had not consented to the sexual acts. The State further argued that the evidence was properly allowed because Hurley never requested that the State give notice of Rule 404(b) *Page 81 
evidence. Following the hearing, the trial court denied the motion in limine and found that the proposed testimony of the victim of the prior rape fell within an exception to Rule 404(a), Ala. R. Evid., and was admissible pursuant to Rule 404(b), as evidence of a common scheme or plan on the part of the accused.
At trial, prior to the State's calling the victim of the prior rape as a witness in its case-in-chief, Hurley renewed the objections he had made in his motion for limine and requested a continuing objection to the admission of any evidence regarding his prior rape conviction. He again argued that it was irrelevant to any issue in the case, and he also argued that its prejudicial effect outweighed its probative value. The trial court overruled Hurley's objections, but noted a continuing objection on this issue. The State then elicited testimony from the victim of the prior rape about the details of the prior rape. She testified that she first met Hurley on April 7, 2000, at a friend's house. She testified that a group of her friends was at the house when she arrived. Hurley was there, but she did not know him. Hurley took part in the group's conversations and mentioned several times going to the Waffle House breakfast restaurant. After he asked several times, she eventually agreed to go, observing that the appellant appeared to be a "nice guy." She testified that she went alone with him to the Waffle House "[j]ust to go eat." Instead of taking her to the restaurant, however, Hurley took her to his apartment, explaining that he needed to make a telephone call before they went to the restaurant. Hurley asked her to come into his apartment while he made the call. When they entered the apartment, Hurley lit a candle, and pretended to make a telephone call before asking her if she wanted to go to the Waffle House. When she replied that she no longer wanted to go and asked that he take her back to her friend's house, he agreed and proceeded toward the front door. She testified that he then closed the door and pushed her toward the living room into a chair. As she begged him to. take her home, Hurley began trying to take off her clothes. He proceeded to pull her pants down; he did not remove her underwear or remove the tampon she had inserted earlier before forcibly raping her. After he finished, she asked him to take her home. Although Hurley initially blocked her at the doorway, he finally agreed and drove her back to her friend's house. She testified that no words were spoken on the return drive.
Hurley contends that the State had no justification for the admission of the evidence of his prior conviction for rape. He claims that the evidence was impermissible character evidence that did not fit into any exception in Rule 404(b), Ala. R. Evid., including those argued by the State, i.e., to prove lack of consent on the part of the victim or motive on his part.
Rule 404(b), Ala. R. Evid., provides, in pertinent part:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ."
In Woodard v. State, 846 So.2d 1102, 1106-07
(Ala.Crim.App. 2002), this Court stated:
 "Evidence of collateral crimes is `presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is *Page 82 
charged — thus, it draws the jurors' minds away from the main issue.' Ex parte Drinkard, 111 So.2d 295, 296 (Ala. 2000). In Robinson v. State, 528 So.2d 343
(Ala.Crim.App. 1986), this Court explained the exclusionary rule as follows:
 "`"'On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.'" Pope v. State, 365 So.2d 369, 371
(Ala.Cr.App. 1978), quoting C. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977). "`This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused's bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.'" Ex parte Arthur, 472 So.2d 665, 668 (Ala. 1985), quoting McElroy's supra, § 69.01(1). Thus, the exclusionary rule serves to protect the defendant's right to a fair trial. "`The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Ex parte Cofer, 440 So.2d 1121, 1123
(Ala. 1983); Terrell v. State, 397 So.2d 232, 234 (Ala.Cr.App. 1981), cert. denied, 397 So.2d 235 (Ala. 1981); United States v. Turquitt, 557 F.2d 464, 468 (5th Cir. 1977).
 "`"If the defendant's commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by a showing of bad character, then proof of such other act is admissible." Saffold v. State, 494 So.2d 164
(Ala.Cr.App. 1986). The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to prove motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. Willis v. State, 449 So.2d 1258, 1260 (Ala.Cr.App. 1984); Scott v. State, 353 So.2d 36
(Ala.CrApp. 1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. "`Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.'" Averette v. State, 469 So.2d 1371, 1374 (Ala.Cr.App. 1985), quoting United States v. Turquitt, supra at 468-69. "`"Prejudicial" is used in this phrase to limit the introduction of probative evidence of prior misconduct only *Page 83 
when it is unduly and unfairly
prejudicial.' [Citation omitted]. `Of course, "prejudice, in this context, means more than simply damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contention; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one."'" Averette v. State, supra, at 1374.'
 "528 So.2d at 347."
In this case, the admission of evidence of Hurley's prior rape conviction violated the general exclusionary rule of Rule404(b). The record discloses no logical connection between Hurley's prior conviction and the present charges. Although the trial court allowed the evidence of the prior conviction to fit within the "common plan, scheme, or design" exception to the exclusionary rule, a review of the record reveals that the circumstances surrounding the collateral offense, i.e., the prior rape, are not sufficiently similar to the circumstances surrounding the charged offense to qualify for the "common plan, scheme, or design" exception. "[T]he plan, scheme, or design exception is an extension of the identity exception — where the charged crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible to identify the defendant as the perpetrator of the charged crime."Register v. State, 640 So.2d 3, 6 (Ala.Crim.App. 1993). See also Ex parte Darby, 516 So.2d 786, 789
(Ala. 1987) (the common-scheme or plan exception has been held to be "coextensive with the identity exception"). The circumstances of the charged crime and the collateral crime must "exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person." Brewer, v. State,440 So.2d 1155, 1161 (Ala.Crim4App. 1983). "Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated . . . rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature." 1 McCormick onEvidence § 190 at 801-03 (4th ed. 1992) (footnotes omitted). See, e.g., Ex parte Baker, 780 So.2d 677,679-80 (Ala. 2000); Bighames v. State, 440 So.2d 1231,1233 (Ala.Crim.App. 1983).
There are similarities between the present charge and the collateral offense: i.e., Hurley by appearing to be a "nice guy" and a "gentlemen," gained the trust of the victims; both victims were young; and both victims were raped. These similarities, standing alone, however, do not show a common scheme or plan, so that anyone viewing the offenses would say that the now charged crime was committed in the same novel or peculiar manner as the previous crime.
The State argues that although Hurley's identity was not at issue in this case because both the victim and the defense witnesses identified Hurley as being present at Hotskee's Lounge and leaving the lounge with the victim, evidence of common scheme or plan was still admissible to rebut the special defense of consent. See Jones v. State, 580 So.2d 97,97-101 (Ala.Crim.App. 1991) (holding that if there is a logical connection between the forcible rape of two women so as to evidence a common plan or scheme on the part of the defendant, the evidence is admissible in response to the defense of consent). Here, however, Hurley did not present any evidence tending to show that he had had consensual sexual intercourse with the victim. Therefore, the prior conviction was *Page 84 
not admissible to show a lack of consent on the victim's part. Nor was the prior conviction admissible to show motive, because there was no showing that the act underlying the prior conviction had a logical tendency to lead to any inference that Hurley, because he had committed the prior act, was motivated to commit the now charged crime. See, e.g., Ex parteKillough, 438 So.2d 333, 335-36 (Ala. 1983). The State should not have been allowed to supply an apparent motive for the now charged rape, by showing that Hurley had raped another woman under what appears to be wholly unrelated circumstances. Such evidence, in its final analysis, shows nothing more than that Hurley's character is bad. This is not an acceptable purpose for admitting the evidence. Thus, Hurley's prior rape conviction was not admissible under the motive exception.
Because evidence of Hurley's prior rape conviction was inadmissible and prejudicial, his convictions must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
 COBB, BASCHAB, SHAW, and WISE, JJ., concur. *Page 652