WELCH, Judge,
dissenting.
In Part I of its opinion, the majority holds that the trial court properly admitted evidence of a collateral crime by Trenton J. McClain because the prior crime was “sufficiently similar” to the present crime to fall under the identity exception *496 or the common plan, scheme, or design exception to the exclusionary rule. I disagree.
The facts of this case are simple. On the evening of September 1, 2006, Jamu-ary Whittaker, Robert Williams, Brianna Washington, Derrick Hunt, and Charlie McGaster were in the parking lot of a club in Gainestown called the Chicken Coop when McClain approached and shot Whit-taker in the neck with a shotgun, killing him. Eyewitnesses to the crime testified at trial that they saw McClain shoot Whit-taker; that Whittaker and McClain had not spoken or had a disagreement that evening; and that Whittaker was unarmed at the time of the shooting. Another eyewitness, however, testified that, after the shooting, a friend of Whittaker’s removed a gun from Whittaker’s pocket. Testimony indicated that McClain and Whittaker had had a disagreement several weeks earlier, but that disagreement was believed by witnesses to have been resolved before the September 1 shooting. Shortly after the shooting, McClain turned himself into police and was charged with murder.
Before trial, the State gave notice of its intent to introduce, under Rule 404(b), Ala. R. Evid., evidence that McClain had previously shot a man in 2002 named Marcus Belton at another club in Gainestown, owned by the same man who owned the Chicken Coop. McClain filed a motion in limine to prohibit introduction of this evidence, arguing that it was being offered solely to show McClain’s bad character. In response, the prosecutor argued:
“Marcus Belton was a shooting that occurred at the Chicken Coop,[1] which is the location in Gainestown where this incident occurred. The allegation is that Mr. McClain shot Mr. Belton with a firearm at that same location where this case happened. Certainly, it is so similar in nature that we feel it would fall squarely within Rule 404(b). And although he wasn’t convicted on it, as the Court is well aware Rule 404(b) doesn’t require a conviction for that evidence to be offered.”
(R. 9.) The trial court denied McClain’s motion in limine. When the State called Belton to testify, McClain again objected, challenging the relevancy and materiality of the evidence. The prosecutor argued that he was offering the evidence to show motive, intent, identity, and a common plan, scheme, or design and that the prior shooting was similar to the present crime because it occurred at a club owned by the same owner as the Chicken Coop and the shot was fired at the “same location on the body.” (R. 252.) McClain’s counsel then argued that there were not enough similarities in the crimes to make evidence of the prior shooting admissible, to which the State replied: “It’s like a sexual abuse case. He’s got a history of violence involved at night clubs when drinking and involving firearms.” (R. 252.)[2] The trial court overruled McClain’s objection, and Belton testified that in June 2002, he was at a club owned by the same man who owned the Chicken Coop when McClain shot him in the collar-bone area with a handgun.
Rule 404(b), Ala. R. Evid., provides, in relevant part:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the char *497 acter of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ...”
In Nicks v. State, 521 So.2d 1018 (Ala.Crim.App.1987), aff'd, 521 So.2d 1035 (Ala.1988), this Court explained:
“Under Alabama law, evidence of any offense other than that specifically charged is prima facie inadmissible. Allen v. State, 380 So.2d 313 (Ala.Cr.App.1979), cert. denied, 380 So.2d 341 (Ala.1980), cert. denied, 449 U.S. 842, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). However, Alabama law provides for the admissibility of evidence of collateral crimes or acts as part of the prosecution’s casein-chief if the defendant’s collateral misconduct is relevant to show his guilt other than by suggesting that he is more likely to be guilty because of his past misdeeds. Brewer v. State, [440 So.2d 1155 (Ala.Crim.App.1983) ]. Numerous Alabama cases list the exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted. These exceptions include the following:
“ ‘(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestas or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes.’
“Nelson v. State, 511 So.2d 225, 233 (Ala.Cr.App.1986).”
521 So.2d at 1025-26. “Evidence of collateral crimes is ‘presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged — thus, it draws the jurors’ minds away from the main issue.’ ” Woodard v. State, 846 So.2d 1102, 1106 (Ala.Crim.App.2002), quoting Ex parte Drinkard, 777 So.2d 295, 296 (Ala.2000).
As the majority recognizes, the common plan, scheme, or design exception to the exclusionary rule “is essentially coextensive with the identity exception” and must be analyzed under the same standards.[3] Ex parte Darby, 516 So.2d 786, 789 (Ala.1987). “[T]he plan, scheme, or design exception is an extension of the identity exception — where the charged crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible to identify the defendant as the perpetrator of the charged crime.” Register v. State, 640 So.2d 3, 6 (Ala.Crim.App.1993), aff'd, 680 So.2d 225 (Ala.1994). “ ‘When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. The physical similarity must be such that it marks the offenses as the handiwork of the accused.’ ” Ex parte Baker, 780 So.2d 677, 680 (Ala.2000), quoting United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir.1994) (further citations omitted). “ ‘[Ejvidence of a prior crime is admissible only when the circumstances surrounding the prior crime and *498 those surrounding the presently charged crime “exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.” ’ ” Irvin v. State, 940 So.2d 331, 347 (Ala.Crim.App.2005), quoting Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting in turn Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim.App.1983). “ ‘Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated ... rapes [or shootings]. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.’ ” Hurley v. State, 971 So.2d 78, 83 (Ala.Crim.App.2006), quoting 1 McCormick on Evidence § 190 at 801-03 (4th ed. 1992) (footnotes omitted).
I agree with the majority that Belton’s shooting and Whittaker’s shooting have some similarities: both occurred at clubs in Gainestown owned by the same man and both resulted in gunshot wounds to the same general area of the victims’ bodies. However, as the Alabama Supreme Court noted in Ex parte Arthur, 472 So.2d at 668-69, factors “common to both [crimes] ... cannot be taken out of context to stand alone for comparison .... [but] [t]he entire circumstances surrounding both [crimes] must be compared.”
Both shootings occurred at clubs, but at different locations. The fact that both clubs were owned by the same man is not relevant in this context, in my view, because nothing in the record indicates that the ownership of the clubs in question had any bearing whatsoever on either shooting. In addition, although both gunshot wounds were in the same general area of the body on the victims, i.e., above the chest, they were not in the exact same location- — Whit-taker was shot in the neck; Belton was shot in the collar bone. Moreover, there are substantial differences between the two shootings. The Belton shooting involved a handgun, while the Whittaker shooting involved a shotgun. The Belton shooting occurred as Belton was walking out of the door of the club, while the Whittaker shooting occurred as Whittaker was standing in the parking lot, having yet to even enter the club. In addition, testimony indicated that the Belton shooting was preceded by a specific warning from one of McClain’s friends to Belton that McClain was going to shoot Belton, while no such specific warning occurred with the Whittaker shooting. Finally, Belton survived his shooting, while Whittaker did not. Analyzing all the circumstances of these crimes, I do not believe that a reasonable person would naturally assume that both of these crimes were committed by the same person. The two shootings were not so unusual and distinctive and were not committed in such a novel and peculiar manner as to make the prior shooting admissible pursuant to the identity or common plan, scheme or design exceptions to the exclusionary rule.
Nor do I believe that the prior shooting was admissible to show McClain’s motive or intent, as the prosecutor also argued at trial. My review of the record reveals nothing indicating any relation whatsoever between the Belton shooting and the Whit-taker shooting that had a logical tendency to lead to any inference that McClain, because he had previously shot Belton in 2002, had the intent to kill Whittaker in 2006, or was somehow motivated to kill Whittaker. See, e.g., Hurley v. State, 971 So.2d 78 (Ala.Crim.App.2006), and Moore v. State, 878 So.2d 328 (Ala.Crim.App.2003). Rather, I think the prosecutor’s statement during trial fairly sums up the true purpose of this evidence: “He’s got a history of violence involved at night clubs when drinking and involving firearms.” (R. 252.) The evidence of the prior shooting did nothing more than show McClain’s *499 bad character and history of violence, and this is not a proper purpose for admission of the evidence.
Because I do not believe that evidence of McClain’s collateral crime was admissible under any of the exceptions in Rule 404(b), I must respectfully dissent.

. The prosecutor later conceded that this statement was incorrect; the previous shooting occurred at a different club that was owned by the same person who owned the Chicken Coop.

. I note that there was no evidence presented indicating that McClain was actually drinking the night of the Whittaker shooting or the night of the Belton shooting.

. There is no question here that McClain’s identity was at issue. McClain presented testimony from McGaster that McGaster did not see McClain in the vicinity at the time of the shooting. McClain's counsel also cross-examined some of the State’s witnesses regarding the lighting at the time of the shooting and their ability or inability to see the shooter.