JOINER, Judge.
Che Dechaune Marks was convicted of first-degree rape by forcible compulsion, see § 13A-6-61(a)(l), Ala.Code 1975, and was sentenced as a habitual felon to life imprisonment without the possibility of parole.[1] Marks appeals.
The evidence at trial tended to show that on May 15, 2009, Marks forced I.C.[2] to engage in sexual intercourse with him. 1.C. testified that she dialed a wrong number on her cellular telephone and hung up after she realized it was a wrong number. A male called her phone back and identified himself as “Chevy.” I.C. stated that she knew someone named Chevy and that the caller wanted “to come over and show [her] who he was.” (R. 179-80.)
I.C. testified that Marks arrived at her apartment-complex parking lot between 11:00 p.m. and 12:00 a.m. and that she did not recognize him. I.C. stated that she and Marks began talking in the parking lot and that he then pulled a gun on her and directed her to a nearby abandoned apartment. Marks threatened to kill her if she resisted. Once inside the apartment, Marks raped I.C.
I.C. reported the rape to the Mobile Police Department the next day. Cpl. Michael Shavers of the Mobile Police Department provided I.C. with recording equipment and instructed her to record telephone calls between herself and Marks. During one call, Marks told I.C. to “lay low,” to go take a bath, and to go *714 to sleep and call him the next day. (State’s Exhibit 9, Track # 1.) In another conversation, I.C. told Marks that her stomach hurt because of the painful intercourse, and Marks replied that he knew she was not pregnant because he had used a condom. I.C. also told Marks that he had not needed to “take it like that” because he was a handsome man and the two would have had sex eventually. (State’s Exhibit 9, Track #3.) Marks asked I.C. why she continued to talk about the incident because he thought they had put it behind them.
The State filed a motion to introduce evidence under Rule 404(b), Ala. R. Evid., in the form of testimony from two women, S.S. and T.F., who claimed that Marks had sexually assaulted them. The State asserted that its purpose in introducing the evidence was “to prove motive, opportunity, plan, knowledge, and identity of the defendant in the instant case.” (C. 73.)[3] In support of its position that the circumstances of I.C.’s case were similar to the sexual assaults of S.S. and T.F., the motion stated:
“1) The instant rape is alleged to have occurred on May 15, 2009. [S.S.] alleges to have been raped during the first week of May 2009 and [T.F.] alleges to have been raped May 9, 2009.
“2) All 3 offenses took place in close physical proximity to one another.
“3) All 3 offenses took place between 11:00 p.m. and 4:00 a.m.
“4) A gun was seen or alluded to in all 3 cases.
“5) All 3 individuals identified their assailant as a black male known to them as ‘Chev/ and who they subsequently each identified as this defendant.
“6) In each case, the assailant allegedly made initial penetration from behind the victim, into her vagina, then, in 2 instances proceeded to then make anal entry, also from behind the victim.
“7) In each offense, the defendant allegedly threatened to kill the victim and her family, specifically, younger children, if the victim reported the crime.
“8) In each instance, the defendant allegedly made subsequent text contact with the victim, alleging that the victim was now his girlfriend and was not al- , lowed to see any other men.”
(C. 73.)
Marks filed a motion in limine to “prohibit the State of Alabama from introducing any evidence or referring] to any alleged prior crime or misdeed under any exception to the exclusionary rule.” (C. 63.) In his motion, Marks stated that such evidence was inadmissible because it did not apply to any “real and open issue” at trial, it was not distinct enough to establish a signature, and the similarities between the acts were insufficient. (C. 63-64.)
Immediately before trial, the circuit court addressed Marks’s and the State’s motions. The State contended that its sole purpose in introducing the evidence was to show Marks’s modus operandi, stating that the “pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature in here.” (R. 16.) Marks claimed that any evidence of his prior bad acts would be “far more prejudicial than probative” and that the three incidents were not so similar as to constitute signature crimes. (R. 15.) Furthermore, Marks argued, a limiting instruction from the court would not adequately pre *715 vent the jury from improperly considering such evidence as proof of his propensity to commit sexual assaults. The circuit court ruled that it would allow the testimony to show Marks’s modus operandi, stating, “I can look at [all the evidence] together to say that this is a signature and it’s unique.” (R. 18-19.)
Marks renewed his objection several times throughout the trial — specifically, after the State’s opening arguments, before S.S. testified, before T.F. testified, during a recess outside the presence of the jury, and during a jury-charge conference with the State and the circuit court.
Marks, the State, and the circuit court had the following discussion with respect to the limiting instruction regarding the' collateral-bad-acts evidence that was to be included in the jury charge:
“[DEFENSE COUNSEL]: I did read [the Ala. R. Evid, Rule 404(b) instruction], Your Honor. The issue I’ve got with it in the case that you cite, I think it’s White [v. State ], in that case, itself, the wording says that modus operandi is an exception that falls under the identity exception to the exclusionary rule. And because of that, I think its improper to give that instruction.
“[THE COURT]: I thought it said it was under the other reasons section of the evidentiary rule. They talk about it as being part of the identity in this, but modus operandi is used in other places beside[s] just identity.
“[THE STATE]: Right. Judge, I think certainly that modus operandi can be used to prove identity if identity is the issue. I think here, however, it is more the defense has certainly gone in the direction that consent is an issue.
[[Image here]]
“So I think to counteract that possibility of consent, it is vital that the State be able to show that he does have this pattern and practice of violent sexual contact with women followed by these very unusual texts or telephone calls that match almost to the letter what [I.C.] describes. And that is [modus operandi], but it is not for the purpose of proving identity.
[[Image here]]
“[THE COURT]: Well, I think it’s going to be clear for the record that the State is offering this to dispute consent and to' establish the pattern and practice of a violent sexual act followed by very unusual text and telephone calls alternating between threats and expressions of boyfriend/girlfriend, love, marriage, that kind of thing.
' “So again, I think that makes it fall under this case law in this area about signature crimes and unusual and distinctive pattern and characteristics, so I’m comfortable with that....”
(R. 494, 496-97, 499.)
During a subsequent jury-charge conference, the following discussion took place:
“[THE COURT]: I looked some more at the little bit older cases before it appears to have gotten muddled to me. And one of these cases talks about the various ways that this can be used to dispute various things. One of them is to rebut a special defense. And it occurred to me when y’all were talking about the consent issue, that’s where we are.
“Again, I think this is where these may have gotten muddled in the past, but the Court of Criminal Appeals talks about that plan, pattern, that kind of thing can only be used in identity. But there’s several other exceptions that you can use character evidence for, one of them being [to] rebut special defense.
“Since [defense counsel] has made it very clear that they don’t contend identi *716 ty, I think it’s also very much in that consent is the defense. I’ve changed this [limiting instruction] to talk about defense of consent. The modus operan-di goes to show to rebut the defense of consent. I looked that over, and I think it works better and it gets where the Court of Criminal Appeals is appearing to have wanted to go starting in about 2010.
“[DEFENSE COUNSEL]: Judge, we would raise an objection to the language of refuting a defense of consent. There’s no reason to place the defense or the defendant in there simply that these are modus ‘operandies’ is what they’ve been traveling under, and I think that that’s sufficient.”
(R. 519-20.)
On appeal, Marks contends that the circuit court abused its discretion and violated Rule 404(b), Ala. R. Evid., because, he says, it erroneously admitted collateral-bad-acts evidence “for purposes not at issue during trial.” (Mark’s brief, p. 10.) He argues further that the State offered no plausible purpose for which the collateral-bad-acts evidence could be admitted. We agree.
“ ‘The admission or exclusion of evidence is a matter within the sound discretion of the trial court.’ Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). ‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-bad-acts evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998). See also Irvin v. State, 940 So.2d 331, 344-46 (Ala.Crim.App.2005).”
Windsor v. State, 110 So.3d 876, 880 (Ala.Crim.App.2012).
Rule 404(b) provides, in relevant part:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ...”
The Alabama Supreme Court has held:
“ ‘ “ ‘On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.’ ” Pope v. State, 365 So.2d 369, 371 (Ala.Crim.App.1978), quoting C. Gamble, McElroy’s Alabama Evidence § 69,01. (3d ed. 1977) “ ‘This exclusionary rule is simply an application of the character rule which forbids the State to prove the accused’s bad character by particular deeds. The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.’ ” Ex parte Arthur, 472 So.2d 665, 668 (Ala.1985), quoting McElroy’s supra, § 69.01(1)....
*717 “ ‘. The well-established exceptions to the exclusionary rule include: (1) relevancy to prove identity; (2) relevancy to prove res gestae; (3) relevancy to prove scienter; (4) relevancy to prove intent; (5) relevancy to show motive; (6) relevancy to prove system; (7) relevancy to prove malice; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes. Willis v. State, 449 So.2d 1258, 1260 (Ala.Crim.App.1984); Scott v. State, 353 So.2d 36 (Ala.Crim.App.1977). However, the fact that evidence of a prior bad act may fit into one of these exceptions will not alone justify its admission. “ ‘Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within- an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.’ ” Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting United States v. Turquitt, [557 F.2d 464] at 468-69 [ (5th Cir.1977) ].’ ”
Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009) (quoting Robinson v. State, 528 So.2d 343, 347 (Ala.Crim.App.1986)).
“All evidence tending to prove a person’s guilt of the now-charged crime may be said to identify him as the guilty person. However, the identity exception to the general exclusionary rule of character is much more specific in that it contemplates the situation where the now-charged crime was committed in a novel and peculiar manner, in order to show the accused to be the perpetrator of the now-charged crime. The method of carrying out the charged crime and the collateral acts must be novel or peculiar and, because of this requirement, some refer to this as the ‘signature crime’ or ‘modus operandi ’ exception ....
“The assertion of identity, as a means of securing the admission of collateral acts evidence, becomes viable only when the identity of the person who committed the now-charged crime is material or of consequence in the case. Merely pleading not guilty does not render identity material or of consequence. Even if identity is not material at the outset of the case, however, it may be made material by conduct of the defense such as cross-examining the identifying witness in such a way as to indicate mistake, by positions taken, or in argument of counsel.”
C. Gamble, McElroy’s Alabama Evidence § 69.01(8) (6th ed.2009)(footnotes omitted; emphasis added).
The record indicates that identity was never “material or of consequence” in this case. I.C. identified Marks in court as the man who raped her. During I.C.’s cross-examination, Marks never questioned I.C.’s identification of him. Additionally, the State played audio recordings of telephone conversations between Marks and I.C. that took place the day following the alleged rape in which both of them discussed the fact that they had engaged in intercourse on the previous night. Moreover, Marks’s mother, who testified in his defense, stated that Marks and I.C. knew each other and that she had seen them together on several occasions. Therefore, the question of Marks’s identity was never at issue in this case, and the modus operandi exception was not applicable as a means of admitting S.S. and T.F.’s *718 testimony. Accordingly, the admission of the collateral-bad-acts evidence for that purpose was erroneous. Although the jury was instructed that it could consider the evidence only for the purpose of the modus operandi exception, the State appears to have offered the collateral-bad-acts evidence under the “plan, design, scheme, system, or pattern” exception to the general exclusionary rule. The jury, however, was not instructed as to that exception, and, under the circumstances of this case, the collateral-bad-acts evidence was not admissible under that exception.
McElroy’s Alabama Evidence, states:
“Evidence of the accused’s commission of another crime or act is admissible if such evidence, considered with other evidence in the case, warrants a finding that both the now-charged crime and such other crime or act were committed in keeping with or pursuant to a single plan, design, pattern, scheme, or system. This rule is applicable whether such plan, design, pattern, scheme, or system is narrow and specific in scope or is measurably broad and general in scope. The majority of decisions speak of this as the plan or scheme exception. Others, however, refer to it as proving a system or pattern.
[[Image here]]
“The present purpose often arises, in cases where the identity purpose is equally applicable as a basis for admitting collateral crimes of the accused. Indeed, there is some judicial language that these two exceptions — plan and identity — are co-extensive in the sense of rendering plan or scheme unavailable. unless identity is clearly at issue. However, a note of caution is due in this regard. The plan and identity exceptions do arise simultaneously in many cases and their respective applications hinge upon common considerations such as the required degree of similarity and uniqueness'between the collateral crime and the charged crime. Yet, one may encounter a case where the plan or scheme theory would be usable despite the fact that identity is immaterial. Suppose, for example, that the accused and the victim go into a bedroom. She claims he raped her and he contends that she consented. Here, identity is not at issue. However, other sexual acts by the accused upon others under highly similar circumstances might gain admission to prove plan or scheme.”
McElroy’s § 69.01(6)(footnotes omitted).
The State repeatedly asserted that, although identity was not at issue, it was offering the testimony of S.S. and T.F. to prove a pattern in order to rebut Marks’s special defense of consent. That purpose might have been proper if Marks had, in fact, ever presented a defense that I.C. had consented to intercourse with him.
This Court held in Hurley v. State, 971 So.2d 78 (Ala.Crim.App.2006), that, when the defendant did not place consent at issue, the admission of evidence of his prior rape convictions violated the general exclusionary rule when the State offered those convictions to prove a lack of consent on the part of the victim. This Court stated:
“ ‘[T]he plan, scheme, or design exception is an extension of the identity exception — where the charged crime and the collateral crime are committed in the same novel or peculiar manner, evidence of the collateral crime is admissible to identify the defendant as the perpetrator of the charged crime.’ Register v. State, 640 So.2d 3, 6 (Ala.Crim.App.1993). See also Ex parte Darby, 516 So.2d 786, 789 (Ala.1987) (the common-scheme or plan exception has been held to be ‘coextensive with the identity exception’) ....'•
*719 [[Image here]]
“The State argues that although Hurley’s identity was not at issue in this case because both the victim and the defense witnesses identified Hurley as being present at Hotskee’s Lounge and leaving the lounge with the victim, evidence of common scheme or plan was still admissible to rebut the special defense of consent. See Jones v. State, 580 So.2d 97, 97-101 (Ala.Crim.App.1991)(holding that if there is a logical connection between the forcible rape of two women so as to evidence a common plan or scheme on the part of the defendant, the evidence is admissible in response to the defense of consent). Here, however, Hurley did not present any evidence tending to show that he had had consensual sexual intercourse with the victim. Therefore, the prior conviction was not admissible to show a lack of consent on the victim’s part.”
Hurley, 971 So.2d at 83-84.
In the instant case, Marks did not present any evidence that called into question whether the intercourse between himself and I.C. was consensual. Marks’s entire defense consisted of two witnesses — his mother and his sister. Marks’s mother testified that Marks knew I.C. previously. Neither witness testified with respect to whether I.C. had ever consented to sexual intercourse with Marks. Moreover, Marks did not present any evidence to rebut the phone calls the State played in which he did not deny using a gun to force I.C. to have sex with him. Thus, consent as a defense was not at issue, and S.S. and T.F.’s- testimony was inadmissible for the purpose of proving plan, design, scheme, system, or pattern.
For the above-stated reasons, Marks’s conviction for first-degree rape is hereby reversed, and this case is remanded to the Mobile Circuit Court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, P.J., concurs. KELLUM and BURKE, JJ., concur in the result.
WELCH, J., dissents.

. Marks was indicted for this offense in September 2009 and was convicted in February 2011. (C. 2, 4.) On appeal, this Court reversed that conviction and remanded Marks’s case to the Mobile Circuit Court. Marks v. State, 94 So.3d 409 (Ala.Crim.App.2012). Marks was then retried, was again convicted, and was sentenced in February 2014. (C. 44.)

. To protect the anonymity of the victim, we are using her initials. See Rule 52, Ala. R.App. P.

. The State’s motion was filed on January 24, 2014. The motion, however, was dated February 7, 2010. Thus, it appears the State simply refiled the same motion it had filed before Marks's first trial. In Marks, we noted several of those purposes were not at issue in Marks's case.