On Application for Rehearing
 

 KELLUM, Judge.
 

 This Court’s opinion of March 26, 2010, is hereby withdrawn and the following opinion is substituted therefor.
 

 The appellant, Allen Hinkle, was convicted of one count of murder, a violation of
 
 *163
 
 § 13A-6-2, Ala.Code 1975, and one count of attempted murder, a violation of §§ 13A-4-2 and 13A-6-2, AIa.Code 1975. The trial court sentenced Hinkle to life imprisonment for the murder conviction and to 99 years’ imprisonment for the attempted-murder conviction. Hinkle was also ordered to pay restitution and to pay an assessment to the Crime Victims Compensation Fund.
 

 Because Hinkle does not challenge the sufficiency of the State’s evidence, a brief recitation of the facts will suffice. Hinkle was arrested and charged with murder for the shooting death of Caneshua Henry, the mother of Hinkle’s child, and with attempted murder for the nonfatal shooting of Caneshua Henry’s cousin, Kimyatta Henry. The shootings occurred early in the morning on October 5, 2008, at Kimyatta Henry’s apartment complex. Kimyatta testified that Hinkle went to Caneshua’s apartment the previous evening to bring diapers to Caneshua for her and Hinkle’s child. Kimyatta arrived at Caneshua’s apartment at approximately 11:00 p.m. that evening. When she arrived, Canesh-ua told her that Hinkle had “got into it with somebody in the breezeway.” (R. 87.) Kimyatta testified that Caneshua was upset with Hinkle because of this altercation and had ordered Hinkle to leave.
 

 Kimyatta left Caneshua’s apartment a little while later; as she was walking to her car, Hinkle walked past her heading toward Caneshua’s apartment. A few moments later, Kimyatta heard a “pow” sound in the breezeway of the apartment. (R. 92.) Hinkle then approached her and said, “What? You trying to protect her?” and shot Kimyatta in the right cheek. (R. 92.)
 

 Officer Tekulve Bowden of the Birmingham Police Department was patrolling the Center Point neighborhood of Birmingham when he was flagged down by Kimyatta outside the apartment complex in which the shootings occurred. Kimyatta informed Officer Bowden that Hinkle had shot her in the face and that he had killed Caneshua. Kimyatta pointed Officer Bow-den toward Hinkle, who was standing next to a car in the parking lot of the apartment complex, and Officer Bowden arrested Hinkle and placed him in the back of his police cruiser. According to Officer Bow-den, Hinkle — while he was in custody— made the following unsolicited statement: “Fuck this shit. She had it coming. She did me wrong. I was dead anyway. Give me the electric chair.” (R. 78-79.)
 

 After both sides rested and the court instructed the jury on the applicable law, the jury found Hinkle guilty on all charges set out in the indictments. This appeal followed.
 

 I.
 

 On appeal, Hinkle argues that the trial court erred when it allowed the State to introduce testimony regarding an incident that occurred a few weeks before Caneshua Henry’s death in which Hinkle repeatedly hit Caneshua in the face. Specifically, Hinkle contends that the testimony was inadmissible evidence of a collateral bad act and that it was not admissible under the intent exception to Rule 404(b), Ala. R. Evid.
 

 Before trial, the State filed notice of its intent to introduce evidence of an incident that had occurred on September 15, 2007, in which Hinkle allegedly assaulted Can-eshua Henry. At trial, outside the presence of the jury, Monica Henry, Canesh-ua’s sister, testified that approximately one month before Caneshua was killed, she visited Caneshua at her apartment to eat dinner and spend the night. Monica testified that while she and Caneshua were preparing dinner, Hinkle was “in and out” of the apartment. (R. 141.) Later, while
 
 *164
 
 Monica was showering, she heard Canesh-ua and Hinkle arguing. Caneshua came into the bathroom with Monica and asked her for her cellular telephone. Monica testified that Caneshua was angry and wanted to use Monica’s cellular telephone to call the police. Hinkle came into the bathroom, stood between the women and the bathroom door, and continued arguing with Caneshua. Caneshua told Hinkle to get out of the bathroom, and Hinkle became angry and hit Caneshua. Monica explained that Hinkle hit Caneshua multiple times in the face with a closed fist before she was able to break up the fight and that Caneshua’s face was bruised and swollen after the incident. Over Hinkle’s objection, the trial court ruled that evidence of the incident was admissible to prove Hinkle’s intent because intent was at issue in this case; it then allowed Monica to testify at trial about the incident.
 

 “The admission or exclusion of evidence is a matter within the sound discretion of the trial court.”
 
 Taylor v. State,
 
 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff'd, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.”
 
 Ex parte Loggins,
 
 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-acts evidence.
 
 See Davis v. State,
 
 740 So.2d 1115, 1130 (Ala.Crim.App.1998).
 

 Rule 404(b), Ala. R. Evid., provides, in part, that “[ejvidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.” However, other-crimes evidence “may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” Rule 404(b), Ala. R. Evid.
 

 Hinkle contends that because the jury could infer Hinkle’s intent to murder Can-eshua from Hinkle’s use of a deadly weapon in effectuating the murder, the State could not present evidence of a collateral offense in order to prove intent. The Alabama Supreme Court has recognized that a defendant’s use of a deadly weapon to kill a victim is sufficient to give rise to an inference that the defendant intended to kill the victim.
 
 See, Ex parte Burgess,
 
 827 So.2d 193, 199 (Ala.2000) (“intent to kill may be inferred from the defendant’s act of using a deadly weapon”). Thus, by demonstrating that Hinkle used a handgun to shoot and kill Caneshua, the State produced sufficient evidence from which the jury could infer that Hinkle acted with the requisite intent to murder Caneshua Henry. However, this Court has held that once the inference has been created, the State may not present evidence of collateral offenses to support a showing of intent.
 
 See Hunter v. State,
 
 802 So.2d 265, 269 (Ala.Crim.App.2000), quoting
 
 Brewer v. State,
 
 440 So.2d 1155, 1159 (Ala.Crim.App.1983) (“ ‘When the element the State bears the burden of proof on can “be inferred from the act itself,” the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief.’ ”) (citations omitted). Accordingly, the trial court erred in allowing the State to present testimony regarding the prior altercation between Hinkle and Caneshua as evidence of intent to commit the charged offense, pursuant to Rule 404(b), because the facts of the murder already gave rise to an inference of intent.
 

 Nevertheless, we conclude that the admission of evidence of the prior altercation, although error, was harmless error. The harmless-error rule provides, in pertinent part:
 

 
 *165
 
 “No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
 

 Rule 45, Ala. R.App. P.
 

 In
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before the violation of certain constitutional rights can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In
 
 Ex parte Crymes,
 
 630 So.2d 125 (Ala.1993), the Alabama Supreme Court explained:
 

 “In determining whether the admission of improper testimony is reversible error, this Court has stated that the reviewing court must determine whether the ‘improper admission of the evidence ... might have adversely affected the defendant’s right to a fair trial,’ and before the reviewing court can affirm a judgment based upon the ‘harmless error’ rule, that court must find conclusively that the trial court’s error did not affect the outcome of the trial or otherwise prejudice a substantial right of the defendant.”
 

 630 So.2d at 126.
 
 See also, Ex parte Greathouse,
 
 624 So.2d 208, 210 (Ala.1993)(holding that the proper harmless-error inquiry asks, absent the improperly introduced evidence, “is it clear beyond reasonable doubt that the jury would have returned a verdict of guilty”).
 

 Moreover, this Court has previously held that in instances where testimony has been erroneously admitted into evidence, that testimony can be rendered harmless by the admission of lawful evidence that tends to demonstrate the same facts. In
 
 McNabb v. State,
 
 887 So.2d 929 (Ala.Crim.App.2001), aff'd, 887 So.2d 998 (Ala.2004), the Alabama Supreme Court explained:
 

 “ ‘ “[Testimony that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred.” ’
 
 Jackson v. State,
 
 791 So.2d 979, 1013 (Ala.Crim.App.), cert. denied, 791 So.2d 1043 (Ala.2000), cert. denied, 532 U.S. 934, 121 S.Ct. 1387, 149 L.Ed.2d 311 (2001), quoting
 
 White v. State,
 
 650 So.2d 538, 541 (Ala.Crim.App.1994), overruled on other grounds,
 
 Ex parte Rivers,
 
 669 So.2d 239 (Ala.Crim.App.1995).
 
 See also, Dawson v. State,
 
 675 So.2d 897, 900 (Ala.Crim.App.1995), aff'd 675 So.2d 905 (Ala.1996) (‘The erroneous admission of evidence that is merely cumulative is harmless error.’); and
 
 Thompson v. State,
 
 527 So.2d 777, 780 (Ala.Crim.App.1988) (‘Testimony which may be apparently illegal upon admission may be rendered prejudicially innocuous by subsequent or prior lawful testimony to the same effect or from which the same facts can be inferred.’).”
 

 887 So.2d at 971.
 

 Although the admission of the testimony of the prior altercation between Hinkle and Caneshua was improperly admitted into evidence, we cannot say that Hinkle was prejudiced to the point of calling into question the validity of his conviction. We have reviewed the record, and it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict even without the evidence of the prior altercation. Hinkle did not dispute that he shot and killed Caneshua. Kimyatta testified that moments before Hinkle shot her in the cheek, Hinkle said to her, “What? You trying to protect her?” (R. 92.) Offi
 
 *166
 
 cer Brown testified that while in custody, Hinkle made the unsolicited statement, “Fuck this shit. She had it coming. She did me wrong. I was dead anyway. Give me the electric chair.” (R. 78-79.) From these statements, the jury could have inferred that Hinkle intended to murder Caneshua.
 

 Given the evidence presented at trial, the circuit court’s erroneous admission of testimony regarding the prior altercation did not affect the outcome of the trial, or otherwise prejudice a substantial right of Hinkle.
 
 See, Crymes,
 
 630 So.2d at 126. Moreover, based on our review of the record, it is “clear beyond a reasonable doubt that the jury would have returned a verdict of guilty” regardless of the trial court’s erroneous admission of Monica Henry’s testimony regarding the prior altercation between Hinkle and Caneshua Henry.
 
 Greathouse,
 
 624 So.2d at 210.
 
 See also, Chapman,
 
 supra. Therefore, any error on the part of the trial court was harmless, and no basis for reversal exists as to this claim.
 

 II.
 

 Hinkle also contends that the trial court committed reversible error when it failed to instruct the jury of all the lesser-included offenses available for his murder and attempted-murder charges. Specifically, Hinkle contends that there was ample evidence to support a jury instruction of manslaughter as a lesser-included offense of murder and for first-degree assault as a lesser-included offense of attempted murder.
 

 “A trial court has broad discretion in formulating its jury instructions, providing those instructions accurately reflect the law and the facts in the case.”
 
 Ingram v. State, 779
 
 So.2d 1225, 1258 (Ala.Crim.App.1999), citing
 
 Raper v. State,
 
 584 So.2d 544 (Ala.Crim.App.1991). “ ‘The trial court’s refusal to give written requested charges does not constitute error when the charges are covered in the trial court’s oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law.’ ”
 
 Toles v. State,
 
 854 So.2d 1171, 1175 (Ala.Crim.App.2002), quoting
 
 Stout v. State,
 
 547 So.2d 894, 898-99 (Ala.Crim.App.1988). In
 
 McNabb v. State,
 
 887 So.2d 929 (Ala.Crim.App.2001), this Court explained:
 

 “ ‘ “A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.” ’
 
 Williams v. State,
 
 675 So.2d 537, 540-41 (Ala.Crim.App.1996), quoting
 
 Anderson v. State,
 
 507 So.2d 580, 582-83 (Ala.Crim.App.1987).
 

 “ ‘ “Whether a crime constitutes a lesser-included offense is to be determined on a case-by-case basis.”
 
 Aucoin v. State,
 
 548 So.2d 1053, 1057 (Ala.Crim.App.1989). “In determining whether one offense is a lesser included offense of the charged offense, the potential relationship of the two offenses must be considered not only in the abstract terms of the defining statutes but must also ... in light of the
 
 particular facts
 
 of each case.”
 
 Ingram v. State,
 
 570 So.2d 835, 837 (Ala.Crim.App.1990) (citing
 
 Ex parte Jordan,
 
 486 So.2d 485, 488 (Ala.1986); emphasis in original).
 
 See also Farmer v. State,
 
 565 So.2d 1238 (Ala.Crim.App.1990).’
 

 “Ford v. State,
 
 612 So.2d 1317, 1318 (Ala.Crim.App.1992).”
 

 887 So.2d at 974. Furthermore, § 13A-1-9(b), Ala.Code 1975, states that “[t]he court shall not charge the jury with re
 
 *167
 
 spect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.”
 

 With these principles in mind, we turn to Hinkle’s specific allegations.
 

 A.
 

 Hinkle argues that the trial court erred when it denied his request to instruct the jury on manslaughter as a lesser-included offense of murder. Specifically, Hinkle argues that sufficient circumstantial evidence existed to support such an instruction.
 

 A person is not guilty of murder if “he or she was moved to act by a sudden heat of passion caused by provocation rec
 
 ognized by law,
 
 and before there had been a reasonable time for the passion to cool and for reason to reassert itself.” § 13A-6-2(b), Ala.Code 1975 (emphasis added). It is well settled that even where the defendant commits the killing as a result of a sudden heat of passion, an instruction on manslaughter is properly refused where there is no evidence indicating that sudden heat of passion was caused by a provocation recognized by law.
 
 Harrison v. State,
 
 580 So.2d 73, 74 (Ala.Crim.App.1991). In
 
 Rogers v. State,
 
 819 So.2d 643 (Ala.Crim.App.2001), we explained:
 

 “Alabama courts have, in fact, recognized three legal provocations sufficient to reduce murder to manslaughter: (1) when the accused witnesses his or her spouse in the act of adultery; (2) when the accused is assaulted or faced with an imminent assault on himself; and (3) when the accused witnesses an assault on a family member or close relative.”
 

 819 So.2d at 662.
 

 The trial court found that Hinkle had failed to present evidence of provocation, saying, “There’s no self-defense. There’s no heat of passion ... there has been no testimony that this Court has received that in any way, shape, or form supports that this was an intentional act caused by provocation” (R. 229.) The trial court also stated, “From the testimony, as far as Ms. Caneshua Henry, it is my humble opinion that the testimony is either [Hinkle] intentionally caused her death, or he did not.” (R. 229.)
 

 Hinkle claims that the facts surrounding the incident give rise to an inference that “something happened” that led Hinkle to shoot and kill Caneshua Henry in the heat of passion. (Hinkle’s brief, at 26.) Hinkle references factors present before and after the shooting, but offers no explanation as to what provocation gave rise to the fatal impulse that led Hinkle to kill Caneshua Henry. Thus, Hinkle has failed to show that he presented sufficient evidence at trial to demonstrate that he was provoked into killing Caneshua Henry by one of the impetuses recognized in law. Accordingly, the trial court correctly refused to instruct the jury on the lesser-included offense of manslaughter.
 

 B.
 

 Hinkle also argues that the trial court committed reversible error when it refused to instruct the jury on first-degree assault as a lesser-included offense of attempted murder. Specifically, Hinkle contends that sufficient evidence of “serious physical injury” existed that would support a conviction for first-degree assault.
 

 Initially, the State argues that Hin-kle failed to preserve this issue for this Court’s review. The trial court held the following discussion regarding which instructions it would give to the jury concerning lesser-included offenses of attempted murder:
 

 “THE COURT: Now, with respect to lesser included charges, on the attempted murder charge involving Ms. Kimyat-
 
 *168
 
 ta Henry, [defense counsel], would you like to be heard on that?
 

 “[Defense counsel]: Well, Judge, I think that taking them in either order that there would be logic for including either attempted manslaughter—
 

 [[Image here]]
 

 “THE COURT: Well, there is no charge of attempted manslaughter, so we’re talking about attempted murder or perhaps an assault in the second degree. For my hearing of the evidence, assault in the first degree would require serious physical injury, and while her injuries were definitely — I don’t think they rise to the level of serious physical injury, [the State], so if you are requesting an assault in the second degree on Ms. Kimyatta Henry, I would agree to that.
 

 “[Defense counsel]: Yes, ma’am.
 

 “THE COURT: But now attempted anything else other than the attempted murder I don’t think is applicable because there was actually an injury, unless there’s something that I am missing, which is always a possibility.
 

 “[Defense counsel]: Assault in the second degree. Judge, as a lesser included on the attempted murder charge?
 

 “THE COURT: Yes, sir. All right. That would be attempted murder and assault in the second degree.”
 

 (R. 227-28.) Hinkle did not immediately object to the trial court’s refusal to instruct the jury on first-degree assault. During the discussion of whether the trial court should instruct the jury on any lesser-included offense of murder, the following exchange took place:
 

 “[Defense counsel]: Well, if you wouldn’t consider criminally negligent homicide [to be a lesser-included offense of murder], then manslaughter I would think certainly would be appropriate.
 

 “THE COURT: But, [defense counsel], there has been no testimony that this Court has received that in any way, shape, or form supports that this was an intentional act caused by provocation or that this was a reckless act. I mean I understand that there’s legal argument to that effect, but I have to look at what came in on testimony. And the State’s witnesses said that he walked up and he shot her and then he turns to the other young woman and says, You were trying to warn her,’ or something to that effect, if the State’s case is to be believed. I heard nothing to indicate that it was reckless or nothing evidentiary wise, or that it was heat of passion.
 

 “[Prosecutor], did you want to say something?
 

 “[The State]: Judge, I think the State concurs with the Court that there was absolutely no testimony from the witness stand to suggest any type of provocation, any type of recklessness that would warrant any type of lesser included offense, specifically in the charge of murder of Ms. Caneshua Henry. And I think the Court is, of course, well versed and knows the law on that and has made an appropriate ruling in that case.
 

 “THE COURT: Anything else you would like to put on the record, [defense counsel], about that? I would be more than happy to allow you to do that at this time.
 

 “[Defense counsel]:
 
 Only my objection to not include a lesser included offense.”
 

 (R. 229-230; emphasis added.)
 

 It is well settled that issues raised
 
 for the
 
 first time on appeal are not preserved for appellate review.
 
 Woods v. State,
 
 845 So.2d 843, 846 (Ala.Crim.App.2002);
 
 Meadows v. State,
 
 773 So.2d 1053, 1054 (Ala.Crim.App.2000). Further,
 

 “No party may assign as error the court’s giving or failing to give a written
 
 *169
 
 instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.”
 

 Rule 21.3, Ala. R.Crim. P. Thus, it appears from the record that Hinkle objected only to the trial court’s refusal to give an instruction for
 
 any
 
 lesser-included offense of murder, not for the trial court’s failure to include an instruction of first-degree assault as a lesser-included offense of attempted murder. Because Hinkle made no objection regarding the trial court’s attempted-murder instruction, the issue he now raises on appeal is not preserved for appellate review.
 

 Moreover, even if Hinkle had properly preserved this issue for appellate review, we cannot say that the trial court erred in refusing a jury instruction on first-degree assault as a lesser-included offense of attempted murder. A person commits the crime of assault in the first degree if, with intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or dangerous weapon. § 13A-6-20(a)(1), Ala. Code 1975. Section 13A-1-2(4), Ala.Code 1975, defines “serious physical injury” as “[pjhysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.”
 

 Hinkle contends that the evidence presented at trial was sufficient to support a finding of “serious physical injury.” However, none of the evidence presented at trial demonstrated that Kimyatta’s injuries constituted “serious physical injury” as defined by § 13A-1-2(14). At trial, Kimyat-ta testified that Hinkle shot her in the right cheek; part of the bullet exited through her neck, and the other part remained lodged in her sinus area. Kimyat-ta did not realize that she had been shot until she felt the blood from the wound on her face. Kimyatta did not have surgery and denied having any long-term effects from the shooting. Additionally, medical records from Kimyatta’s hospital visit indicated that she was admitted to and released from the hospital on the same day. Thus, the trial court properly determined that there was not sufficient evidence to demonstrate the victim suffered “serious physical injury” required to support a conviction of first-degree assault. Accordingly, the trial court did not err when it denied Hinkle’s request to instruct the jury on first-degree assault as a lesser-included offense of attempted murder.
 

 Based on the foregoing, the judgment of the trial court is due to be affirmed.
 

 APPLICATION FOR REHEARING OVERRULED; OPINION OF MARCH 26, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
 

 WISE, P.J., and WELCH, WINDOM, and MAIN, JJ., concur.