WELCH, Presiding Judge,
dissenting.
The majority affirms Keokie Tareze Hudson’s convictions for two counts of attempted murder and one count of discharging a firearm into an occupied vehicle, charges based on two separate incidents. The first incident occurred on January 17, 2009, and the victim, Stanley Miles, testified that he was sitting in his car and talking with a friend when Hudson approached them and fired five shots into the vehicle. The second incident occurred on June 28, 2009, when Miles was attending a neighborhood gathering. *475 Miles testified that Hudson arrived at the gathering approximately 15 to 20 minutes after he arrived and that Hudson fired two shots at him, one of which hit Miles in the back, damaging his lungs and heart. The State also presented evidence relating to three other collateral acts involving Hudson, Miles, and Miles’s brother, Tavaries Bates. The trial court admitted the collateral-act evidence over Hudson’s objections; Hudson raises those objections again on appeal. The majority finds no error in the trial court’s admission of the evidence. I disagree, and I would hold that the trial court committed reversible error when it admitted evidence of two of the collateral acts because that evidence was not admissible.
“Evidence of prior or subsequent collateral bad acts and crimes is generally inadmissible.” Bailey v. State, 75 So.3d 171, 183 (Ala.Crim.App.2011). The well established rule is that a defendant’s guilt or innocence is to be based on evidence relevant to the crime with which he is currently charged. Evidence of collateral bad acts is “presumptively prejudicial because it could cause the jury to infer that, because the defendant has committed crimes in the past, it is more likely that he committed the particular crime with which he is charged — thus, it draws the jurors’ minds away from the main issue.” Ex parte Drinkard, 777 So.2d 295, 296 (Ala.2000). The general rule of exclusion of collateral-act evidence protects the defendant’s right to a fair trial because the prejudicial effect of evidence of other crimes or bad acts is likely to far outweigh any probative value that might be gained from admitting the evidence. E.g., Irvin v. State, 940 So.2d 331 (Ala.Crim.App.2005). “Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of jurors.” C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (5th ed.1996).
Although the general rule is one of prohibition of collateral-act evidence, that evidence can be admitted for limited purposes in some cases. Rule 404(b), Ala. R. Evid., provides, in pertinent part:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident .... ”
That a collateral bad act or offense might be offered for one of the “other purposes” does not automatically render the evidence admissible. Further analysis must be performed by the trial court:
“ ‘Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.’ United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir.1977) (citations omitted).
“However, it is ‘only when the probative value of evidence is “substantially outweighed by the danger of unfair prejudice,” ... that relevant evidence should be excluded.’ United States v. Bailleaux, 685 F.2d 1105, 1111 (9th Cir.1982) (emphasis in original). ‘[T]he probative value of the evidence of other *476 offenses must also be balanced against its “prejudicial nature” to determine its admissibility. “Prejudicial” is used in this phrase to limit the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.’ State v. Daigle, 440 So.2d 230, 235 (La.Ct.App.1983).”
Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985). Determinations of the admissibility of evidence are matters for the trial court’s discretion, and those determinations will be reversed only if the trial court abuses its discretion. See, e.g., Tariq-Madyun v. State, 59 So.3d 744 (Ala.Crim.App.2010).
The State’s pretrial notice of the proposed Rule 404(b) evidence stated, in relevant part:
“1. Between April to May 2008, Keokie Hudson attempted to rob Tavaries Bates, the victim’s brother, and shot at him while the victim was with his brother.
“2. On November 8, 2008, Keokie Hudson shot at Stanley Miles, the victim, in the current case, while he was at a birthday party located at 7542 66th Street South, Birmingham, AL 35206.
“3. On January 27, 2009, Keokie Hudson drove by the victim’s house where he lived with his brother Ta-varies Bates at-6th Avenue South, Birmingham, AL 35215. When Keokie drove by the house, he shot into it striking Tavaries Bates who was standing on the porch.”
(C. 120.)
At trial, outside the jury’s presence, the court considered testimony about the three collateral acts and admitted the testimony for limited purposes. Although the majority states that the trial court admitted the evidence to show identity and intent, the record indicates that the majority’s statement is only partially correct. At the conclusion of the hearing on the admissibility of the first two collateral acts, the trial court stated that it would admit evidence of those acts for a limited purpose on the issue of intent and on identity, if identity became an issue. (R. 41-42.) However, the trial court then instructed the jury during Miles’s testimony that the first two collateral acts were “admissible on the issues of intent, motive, or identity.” (R. 59.) After hearing testimony outside the presence of the jury from Tavaries Bates about the third collateral act — Hudson’s shooting Bates while Bates was at his girlfriend’s residence — the court overruled Hudson’s objection to the evidence and rejected Hudson’s argument that the evidence was inadmissible because Miles was not the victim of that shooting. The trial court then instructed the jury that the testimony from Bates about his being shot was “offered for a very limited purpose, not that the defendant is just a person of bad character and he acted in conformity with that bad character on this occasion. But it’s offered to show intent, motive, plan, scheme, design, those types of issues for that limited purpose only.” (R. 110.)[4]
*477 The majority holds that testimony about the three collateral acts was properly admitted because, the majority reasons, the testimony was relevant to prove identity and intent. In its discussion of the reasons the collateral evidence fits within the identity exception, the majority holds, in relevant part:
“The circumstances surrounding the collateral acts are that Hudson tried to kill both Stanley Miles and his brother, Tavaries Bates, on several occasions between February 2008 and January 27, 2009. The record reveals that in each incident Hudson was the shooter and either Miles or Bates was the intended victim; that the collateral acts, as well as the incidents that formed the bases of the charges all happened within an 18-month period; and that all the acts happened in close proximity to the Gate City housing project. These facts, when taken together, show enough similarity to fit within the identity exception to the exclusionary rule.”
85 So.3d at 472.
I am compelled to note, first, that the State did not argue at trial, nor did the trial court hold, that the collateral acts and the crimes for which Hudson was being tried had been committed in a novel or peculiar manner. Rather, the State essentially argued that evidence of the collateral acts was admissible in Hudson’s trial because Hudson had previously shot at Miles and Bates and that rationale is the very essence of the general prohibition against collateral-act evidence. Evidence is not admissible pursuant to Rule 404(b) when it is offered to prove a defendant’s character and to show the defendant’s conformity therewith. As for the trial court, when it ruled that the collateral-act evidence was admissible, the court simply stated that the defense had placed in issue Hudson’s identity as the shooter. Thus, in determining that the collateral crimes were sufficiently similar to the crimes for which Hudson was on trial, the majority makes an argument that neither the State nor Hudson made below.
As for the substance of the majority’s holding, I believe that the majority’s application of the identity exception to the exclusionary rule is far too liberal in this case. The principles governing the identity exception are well established. In Irvin v. State, 940 So.2d 331 (Ala.Crim.App.2005), this Court stated:
“Collateral-act evidence is admissible to prove identity only when the identity of the person who committed the charged offense is in issue and the charged offense is committed in a novel or peculiar manner. 1 Charles W. Gamble, McElroy’s Alabama Evidence § 69.01(8) (5th ed.1996); Ex parte Arthur, 472 So.2d 665 (Ala.1985); Johnson v. State, 820 So.2d 842, 861 (Ala.Crim.App.2000); Tyson v. State, 784 So.2d 328, 344 (Ala.Crim.App.), aff'd, 784 So.2d 357 (Ala.2000). ‘Under the identity exception to the general exclusionary rule prohibiting the admission of other or collateral crimes as substantive evidence of the guilt of the accused, the prior crime is not relevant to prove identity unless both that and the now-charged crime are “signature crimes” having the accused’s mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person.’ Bighames v. State, 440 So.2d 1231, 1233 (Ala.Crim.App.1983). ‘[E]vi-dence of a prior crime is admissible only when the circumstances surrounding the *478 prior crime and those surrounding the presently charged crime “exhibit such a great degree of similarity that anyone viewing the two offenses would naturally assume them to have been committed by the same person.” ’ Ex parte Arthur, 472 So.2d at 668 (quoting Brewer v. State, 440 So.2d 1155, 1161 (Ala.Crim.App.1988)). See also Mason v. State, 259 Ala. 438, 66 So.2d 557 (1953); and Govan v. State, 40 Ala.App. 482, 115 So.2d 667 (1959) (recognizing that the identity exception is applicable only where both the prior crime and the charged offense were committed in the same special or peculiar manner).
“When extrinsic offense evidence is introduced to prove identity, the likeness of the offenses is the crucial consideration. In other words, the physical similarity must be such that it marks the offenses as the handiwork of the accused.”
940 So.2d at 347. (Emphasis added.)
The circumstances of this case in no way support the majority’s holding, and the legal principles governing the admissibility of collateral-act evidence to prove identity demand a reversal here. The charged offenses and the collateral acts were not committed in any special or peculiar manner that would cause one to assume naturally that they had been committed by the same person. In fact, the circumstances surrounding the instances from which the charges arose were not even similar to one another. Furthermore, the circumstances surrounding the three collateral acts were not at all similar to one another. None of the crimes here could be considered “signature crimes,” i.e., crimes that had a distinctive modus operandi that identified Hudson as the perpetrator. Nothing identified any of the offenses — charged or uncharged — “as the handiwork of the accused.” Irvin, 940 So.2d at 347. The majority’s assertion that the identity exception applied because the incidents occurred within an 18-month period, because each incident involved Hudson as the shooter and either Miles or his brother as a victim, and because the incidents all occurred in or near the housing project is untenable; if the identity exception applied to allow these collateral acts into evidence, the exception would be rendered virtually meaningless.
“ ‘Much more is demanded than the mere repeated commission of crimes of the same class, such as repeated ... rapes. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.’ 1 McCormick on Evidence § 190 at 801-03 (4th ed.1992) (footnotes omitted).”
Hurley v. State, 971 So.2d 78, 83 (Ala.Crim.App.2006).
The only probative function of the evidence offered here was an impermissible one: “to prove the character of a person in order to show action in conformity therewith.” Rule 404(b), Ala. R.Crim. P. The collateral acts were not admissible under the identity exception. The trial court abused its discretion when it admitted the evidence under the identity exception, and I disagree with the majority’s analysis and decision as to this issue.
As for the majority’s determination that the collateral acts were admissible to show Hudson’s intent, I also disagree with this holding. The details regarding the collateral incidents that were developed at trial revealed that two of the collateral events involved Hudson’s actions toward a third party, the victim’s brother, Bates, and that Miles was not even present during the commission of the third collateral act. The details regarding the collateral acts were confusing with regard to Hudson’s intent, and that confusion was exacerbated by the fact that two of the three collateral *479 crimes involved Bates, and not Miles. In fact, Bates testified that the first collateral act — when Hudson attempted to rob him— appeared to have occurred because Hudson was under the influence of drugs. The majority fails to explain how collateral incidents in which Hudson allegedly shot the ■victim’s brother were evidence of Hudson’s intent to shoot the victim during the subsequent incidents for which he was being tried. Rather, the majority simply states:
“In the present case, the State had to prove that Hudson intended to cause the death of another person as part of its burden in proving attempted murder. See §§ 13A-4-2, 13A-6-2, Ala.Code 1975. By presenting evidence that Hudson shot at Miles and his brother on prior occasions, the State could demonstrate that Hudson intended to kill Miles on the day in question. Therefore, that evidence fits the Rule 404(b) exception for intent.”
85 So.3d at 472-73.
I disagree. First, the quote from the majority opinion indicates that the primary purpose for introducing the collateral-act evidence was to encourage the jury to find Hudson guilty of the present shooting charges based on the fact that Hudson had previously shot at Miles and another man and that in the present shooting he had, apparently, acted in conformity with the prior acts. The majority’s rationale does not support its determination that the collateral-act evidence fit within the intent exception of Rule 404(b).
Second, this Court held in Hinkle v. State, 67 So.3d 161 (Ala.Crim.App.2010), a case presenting a similar issue, that evidence of a collateral offense was improperly admitted. Allen Hinkle was convicted for the shooting death of Caneshua Henry and for the attempted murder of Henry’s cousin. The trial court permitted testimony to the effect that, a few weeks before the shooting, Hinkle had struck Caneshua multiple times in the face during an argument; the court determined that the collateral-act evidence was admissible to prove Hinkle’s intent. We disagreed and said:
“Hinkle contends that because the jury could infer Hinkle’s intent to murder Caneshua from Hinkle’s use of a deadly weapon in effectuating the murder, the State could not present evidence of a collateral offense in order to prove intent. The Alabama Supreme Court has recognized that a defendant’s use of a deadly weapon to kill a victim is sufficient to give rise to an inference that the defendant intended to kill the victim. See, Ex parte Burgess, 827 So.2d 193, 199 (Ala.2000) (‘intent to kill may be inferred from the defendant’s act of using a deadly weapon.’). Thus, by demonstrating that Hinkle used a handgun to shoot and kill Caneshua, the State produced sufficient evidence from which the jury could infer that Hinkle acted with the requisite intent to murder Caneshua Henry. However, this Court has held that once the inference has been created, the State may not present evidence of collateral offenses to support a showing of intent. See Hunter v. State, 802 So.2d 265, 269 (Ala.Crim.App.2000), quoting Brewer v. State, 440 So.2d 1155, 1159 (Ala.Crim.App.1983) (‘ “When the element the State bears the burden of proof on can ‘be inferred from the act itself,’ the State may not use extraneous offenses as circumstantial evidence of that element in its case in chief.” ’) (citations omitted). Accordingly, the trial court erred in allowing the State to present testimony regarding the prior altercation between Hinkle and Canesh-ua as evidence of intent to commit the charged offense, pursuant to Rule 404(b), because the facts of the murder *480 already gave rise to an inference of intent.”
67 So.3d at 164.[5]
As in Hinkle, the evidence about the charged shootings presented at trial already gave rise to an inference of Hudson’s intent to murder Miles. The jury heard testimony that on one occasion Hudson had fired multiple shots into a vehicle in which Miles was a passenger, and that, in the other incident, Hudson had walked up to Miles at a social gathering and had fired two shots at him, one of which struck him in the back and damaged his lungs and heart. There was no dispute about the intention of the shooter that might have warranted admission of any collateral-act evidence to prove intent. The defense did not argue that the shootings resulted from an accident or that Hudson had fired the shots in self-defense or during a heated confrontation. Rather, if Hudson committed the shootings, his intent was evident from the use of the deadly weapon. Therefore, the trial court abused its discretion by admitting the collateral acts to prove intent.
For purposes of this dissent I assume, without deciding, that the second collateral act proffered by the State — the November 8, 2008, shooting of Miles — was properly admitted to show Hudson’s motive. Even assuming that the collateral-act evidence involving Miles was admissible, the collateral acts involving Miles’s brother did not meet the basic requirements of the balancing test: “The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government’s case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.” Averette v. State, 469 So.2d 1371, 1374 (Ala.Crim.App.1985), quoting United States v. Turquitt, 557 F.2d 464, 468-69 (1977) (emphasis added). The majority has not made any attempt to explain how evidence about shootings in which Miles’s brother was the victim was relevant and, in my opinion, the majority could not do so because that evidence was clearly irrelevant. Even if the second collateral act that involved Hudson’s firing a shot at Miles would have been admissible standing alone, the jury here was also provided with irrelevant, unduly prejudicial evidence about Hudson’s actions toward Miles’s brother, and that evidence served only to portray Hudson as having poor character and to encourage the jury to find Hudson guilty of the charged crimes because in committing them he was acting in conformity with his character.
Finally, the trial court failed to consider the balancing of the prejudicial effect of the evidence relative to its possible probative value, and the majority here also has failed to adequately balance the relevant factors. A proper balancing of the prejudicial effect of evidence relative to its possible probative value requires an analysis of the purpose for which the evidence was offered, whether the proffered evidence was relevant and reasonably necessary to the State’s case, and only then a consideration of whether the evidence is unfairly or unduly prejudicial. See Ex parte Jackson, 33 So.3d 1279, 1284-85 (Ala.2009), and cases quoted therein. Although I would hold that evidence about the first and third collateral incidents was inadmissible because the evidence did not fit within any exception to the general prohibition against such evidence and was not relevant to the State’s case, even if the evidence had fit into one or more of the exceptions and had been relevant so that a balancing *481 of the relevant factors was necessary, I would have concluded that the evidence was unduly and unfairly prejudicial to Hudson.
The collateral evidence was not reasonably necessary to the State’s case. If the facts regarding the shooting occurred as Miles testified, there would have been no question that Hudson committed the shootings for which he was on trial. The evidence of collateral acts against Miles’s brother undoubtedly confused the issue of Hudson’s guilt in the charged offenses. The probative value, if any, of the irrelevant testimony about shootings of another person did not outweigh that undue prejudice to Hudson. The admission of irrelevant collateral-act evidence created a substantial danger that the jury was inflamed by the evidence and decided that because Hudson committed other shootings, he also probably committed the crimes for which he was on trial. The majority’s decision in this case permits the undue and unfair prejudice that Rule 404(b) was intended to protect against.
Although the trial court has discretion to decide whether collateral-act evidence is admissible, that discretion has limits. I believe the trial court abused its discretion when it admitted the evidence of the collateral acts against Miles’s brother. Hudson is entitled to a reversal and a new trial.
For the foregoing reasons, I dissent.
KELLUM, J., concurs.

. The trial court’s instructions were clearly inadequate. See Ex parte Billups, [Ms. 1090554, Dec. 30, 2010] - So.3d - (Ala.2010) ("By simply reciting the complete 'laundry list’ of permissible theories under Rule 404(b), the trial court’s instruction in this case gave the jury inadequate guidance. ... The trial court’s instruction also failed to limit the State to the purposes — as nonspecific as they were — that it advanced in support of admission of the evidence regarding Billups’s involvement in [the collateral incidents]. Thus, we conclude that the trial court erred by failing to limit the jury's consideration of that evidence to only those purposes for which the evidence was purportedly offered by the State (plan, identity, motive, and intent).”). Furthermore, the trial court’s *477 final charge to the jury in this case included no instruction about the collateral-act evidence. However, because Hudson did not raise these objections at trial, he failed to preserve the issue for appeal.

. The Court held that the error was harmless because the jury would have returned a ver-diet of guilty regardless of the erroneous admission of that evidence.