BURKE, Judge.
James Thomas appeals his conviction for a school employee having sexual contact with a student under the age of 19 years, a violation of § 13A-6-82, Ala.Code 1975, and his resulting sentence of 12 months in the custody of the Wilcox County Sheriff. Thomas was also charged with sexual abuse in the first degree, but the jury found him not guilty of that offense.
The State’s evidence indicated the following. In November 2010, the victim, P.H., was a 17-year-old senior at Wilcox Central High School, and Thomas was the principal of that school. On multiple occasions since P.H.’s sophomore year, Thomas addressed P.H. as “you old cheater” and asked her when she was going to call him. (R. 112.) During P.H.’s senior year, she worked as an aid in the school office. On November 15, 2010, while P.H. was working in the school office, Thomas privately asked her whether she was having sex with her close friend and classmate, Everett. P.H. responded that she was not having sex with Everett. The conversation was interrupted by another student entering the office. After the other student left the office, Thomas told P.H. that he had been watching her for a long time and that she did not know how “hot” she was making him. (R. 116.)
The next day, P.H. approached the two school secretaries in the school office and told them: “[Yj’all owe me a lunch because /all left me in there by myself with that pervert.” (R. 116.) One of the secretaries responded: “[Y]ou weren’t supposed to be in there by yourself alone.” (R. 117.) P.H. then left the office, but she returned to the office later that day to work. After P.H. returned to the school office, Thomas called P.H. into his office and closed the door behind her. Thomas then asked P.H. about her relationship with some of her male classmates, and he stated: “I just want you to remember you mine.” (R. 126.) Thomas then “rubbed [P.H.’s] hair back and he kissed [her] on the forehead.” (R. 128.) At that time, two school employees knocked on the door of Thomas’s office, and he had a short discussion with them in the doorway of his office. After those employees left Thomas’s office, he closed the door, grabbed P.H.’s neck, and kissed her on her lips. P.H. testified that *1266 she “pulled back” from Thomas, but he hugged her. (R. 129.) Thomas then grabbed P.H.’s hand, rubbed it against his penis, and stated: “[L]ook what you’ve done to me.” (R. 130.) P.H. immediately left Thomas’s office. As P.H. was leaving Thomas’s office, he asked her whether she was going to “blast [him] out.” Id. P.H. understood that question to concern whether she was going to tell anyone what he had done, and she responded that she was “not going to blast [him] out.” Id. As P.H. was walking out of the school office, she told one of the secretaries to “get [her] transfer papers ready because [she was] out of here.” Id. P.H. then met one of her friends in the hallway of the school, and she “fell in [his] arms crying.” Id. P.H. told some of her friends that Thomas “went too far” and that “he touched [her].” Id. Shortly after that event, the bell rang for the end of the school day.
Tranita Mack Crum, P.H.’s godmother, picked up P.H. from school that day. Crum noticed that P.H. looked upset, but Crum did not ask P.H. at that time whether anything was wrong. That evening, Crum sent P.H. a text message asking her whether anything was wrong. P.H. responded that “Mr. Thomas had tried her.” (R. 294.) Also, P.H. testified that during that evening, she pulled out the section of her hair above her forehead where Thomas had kissed her, and she scrubbed her lips with bleach. (R. 134-35.)
On appeal, Thomas first argues that the trial court erred when it denied his motion for a judgment of acquittal on the ground that the State presented insufficient evidence to support his conviction for violating § 13A-6-82, Ala.Code 1975. Specifically, Thomas argues that he did not engage in “sexual contact” with P.H. as that term is defined in § 13A-6-82.
This Court has stated:
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘“The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040,1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from *1267 which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’
“Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992).”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003).
Section 13A-6-82, Ala.Code 1975, provides, in pertinent part:
“(a) A person commits the crime of a school employee having sexual contact with a student under the age of 19 years if he or she is a school employee and engaging in sexual contact with a student, regardless of whether the student is male or female. Consent is not a defense to a charge under this section.
“(b) As used in this section, sexual contact means any touching of the sexual or other intimate parts of a student, done for the purpose of gratifying the sexual desire of either party. The term includes soliciting or harassing a student to perform a sex act.”
It is undisputed that at the time of the incident, Thomas was a school employee and P.H. was a student under the age of 19 years. As it was before the trial court, Thomas’s primary argument on appeal is that there was no evidence indicating that he had sexual contact as defined by § 13A-6-82 with P.H. because, he says, there was no evidence indicating that he touched the sexual or other intimate parts of P.H. Thomas states that the act of a student touching the sexual or other intimate parts of a school employee is not proscribed by the plain language of § 13A-6-82. However, it is unnecessary for this Court to address Thomas’s primary argument because § 13A-6-82 also states that the term sexual contact “includes soliciting or harassing a student to perform a sex act.”
In his secondary argument, Thomas contends that, in addition to presenting no evidence indicating that he touched the sexual or other intimate parts of P.H., the State failed to present sufficient evidence indicating that he solicited or harassed P.H. to perform a sex act. As Thomas notes, the term “sex act” is not defined in § 13A-6-82. However, the preceding code section, § 13A-6-81, Ala.Code 1975, prohibits a school employee from engaging in “a sex act or deviant sexual intercourse with a student,” and defines “sex act” as “sexual intercourse with any penetration, however slight.” We note that those two code sections were enacted by the legislature as two sections of the same act. See Act No. 497, Ala. Acts 2010. “Generally, statutes covering the same or similar subject should be construed together to determine their meaning when possible.” Stewart v. State, 730 So.2d 1203, 1216 (Ala.Crim.App.1996). We therefore will construe the term “sex act” in § 13A-6-82 to mean sexual intercourse. Thus, we must determine whether the State presented sufficient evidence indicating that Thomas solicited or harassed P.H. to perform sexual intercourse.
The evidence indicates that Thomas asked P.H. when she was going to call him. Thomas told P.H. that he had been watching her for a long time and that she was making him “hot”. Thomas asked P.H. about her relationships with some of her male classmates, including a specific question regarding whether she had a sexual relationship with one of those classmates. Thomas told P.H.: “I just want you to *1268 remember you mine.” In the privacy of Thomas’s office, he rubbed P.H.’s hair, hugged her, and kissed her on her forehead and lips. Thomas then grabbed P.H.’s hand, rubbed it against his penis, and stated: “[L]ook what you’ve done to me.” Thomas’s actions caused P.H. to, among other things, rush out of the school office, cry, pull out a section of her hair, and scrub her lips with bleach; thus, there was evidence indicating that she was alarmed by his actions. Viewing all this evidence in the light most favorable to the State, we find that the jury by fair inference could have found that, based on Thomas’s words and conduct directed at P.H., he was seeking to have sexual intercourse with her. Therefore, the jury could by fair inference find that Thomas “solicit[ed] or harassed] [P.H.] to perform a sex act,” and, thus, that Thomas engaged in sexual contact with P.H. in violation of § 13A-6-82. We conclude that the trial court did not err in denying Thomas’s motion for a judgment of acquittal.
Finally, Thomas argues that the trial court erroneously defined the term “sexual contact” in its instructions to the jury. However, a review of the record shows that Thomas never objected to the trial court’s instructions based on this ground.
Rule 21.3, Ala. R.Crim. P., provides:
“No party may assign as error the court’s giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.”
“An objection must be specific enough to put the trial court on notice of any alleged error and provide the court with an opportunity to correct any error if necessary.” Finch v. State, 715 So.2d 906, 912 (Ala.Crim.App.1997). “It is well settled that ‘[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ ” Spencer v. State, 58 So.3d 215, 246 (Ala.Crim.App.2008) (quoting Ex parte Frith, 526 So.2d 880, 882 (Ala.1987)). Furthermore, “[i]t is well settled that issues raised for the first time on appeal are not preserved for appellate review.” Hinkle v. State, 67 So.3d 161, 168 (Ala.Crim.App.2010).
In the present case, after the trial court completed its oral charge to the jury, defense counsel stated:
“With regard to our requested charge Number 1, we respectfully except the instruction that the Court has given and would renew our request that our requested charge Number 1 be given. We think that the Court’s instruction was limited and it did not fully put before the jury the defendant’s not taking the witness stand.”
(R. 427.) The defense’s requested jury charge number one concerned the fact that the defendant’s failure to testify cannot be considered in determining whether he is guilty. (C. 217.) It did not concern the definition of the term “sexual contact.”
During the jury’s deliberations, in response to a question from the jury concerning sexual contact, the trial court rein-structed the jury concerning the elements and definitions of the charges against Thomas. After the trial court gave those instructions, defense counsel stated:
“Judge, the defendant would except to the Court’s recharge of the jury.
“Sexual contact, both in terms of Count One and Count Two, the Court *1269 mentioned briefly the interplay of reasonable doubt as to the recharge. We say that the Court’s recharge gives undo emphasis on part of the Court’s instruction that credibility and inconsistencies of witnesses is a major part of the facts of this case and it’s that interplay of the whole that presents everything in a neutral manner. When the Court fails to give the complete charge again, it places undue emphasis on the sexual contact.
“And for those reasons, we except the Court’s additional instruction.”
(R. 434-35.) Concerning that objection, the trial court simply responded: “Okay.” (R. 435.)
Before the trial court, Thomas never argued that the trial court erroneously defined the term “sexual contact” in its instructions to the jury. Therefore, because the specific ground now raised on appeal was not raised before the trial court, Thomas’s claim is not preserved for our review.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.