Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

———————————————

### SC-2024-0862

———————————————

**Ex parte Corey Lee Walton**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re: Corey Lee Walton**

**v.**

**State of Alabama)**

**(Tuscaloosa Circuit Court: CC-22-30;
Court of Criminal Appeals: CR-2022-1342)**

SELLERS, Justice.

We granted Corey Lee Walton's petition for a writ of certiorari asking us to consider the Court of Criminal Appeals' decision affirming Walton's conviction and sentence for reckless manslaughter. Walton v. State, [No. CR-2022-1342, Aug. 23, 2024] ___ So. 3d ___ (Ala. Crim. App. 2024). Walton asserts that he is entitled to a new trial because the State was allowed to introduce a document into evidence that detailed Walton's prior criminal convictions. See, generally, Rule 404(b)(1), Ala. R. Evid. ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). We reverse the judgment of the Court of Criminal Appeals.

Walton was convicted of reckless manslaughter after he allegedly shot and killed Christopher Champion during a brawl at a party. Broadly speaking, the evidence at trial suggested that a group of people at the party pursued Walton and his friend, Julio Chuca, and surrounded them with the apparent intent to harm them. Walton pulled a gun and, as he was being tackled, allegedly fired it and shot Champion. Although Walton argued during the trial that the prosecution had not proven that Walton had actually shot Champion, he also argued that, even if the

prosecution had met its burden, the evidence established that Walton had acted in self-defense.[1]

The issue on certiorari review is whether the Court of Criminal Appeals erred in concluding that the trial court had acted within its discretion in allowing the State to introduce details of Walton's prior crimes. See, generally, White v. State, 179 So. 3d 170, 184 (Ala. Crim. App. 2013) (noting that the admission of evidence is a matter within the trial court's discretion). Walton's prior crimes included attempted murder, discharging a gun into an occupied building, first-degree robbery, and unlawful distribution of a controlled substance, all of which occurred only a month and a half before the brawl at the party.

Walton was granted youthful-offender status for his prior crimes, and one of the conditions imposed on him in receiving that designation was that he is no longer allowed to possess a firearm. Based on that fact, the State has argued that, because Walton illegally possessed a gun at the time Champion was shot, Walton was acting "unlawfully" when he supposedly defended himself. And, as the State points out, a person who

---

[1]Walton was also accused of shooting Chuca, who survived. Walton was charged with second-degree assault for allegedly shooting Chuca, but he was acquitted of that charge

is acting unlawfully when defending himself or herself cannot rely on Alabama's "stand your ground" policy, which abrogates the common-law duty to retreat before engaging in self-defense. See § 13A-3-23(b), Ala. Code 1975 ("A person who is justified under subsection (a) in using physical force [in self-defense], including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground." (emphasis added)); Malone v. State, 221 So. 3d 1153, 1156 (Ala. Crim. App. 2016) ("[A]n accused who claims to have been justified in using deadly force under § 13A-3-23 must have complied with the common-law rules regarding the duty to retreat unless he or she meets the requirements of § 13A-3-23(b).").

There is some confusion in this area of the law, because "stand your ground" and "self-defense" are sometimes incorrectly used interchangeably. Under the common law, a person claiming self-defense had a duty to retreat, but this obligation ceased if the person could show that he or she were unable to retreat safely when there was no safe avenue for escape. In contrast, under stand-your-ground reasoning, there is no duty to retreat; a person may defend himself or herself

4

whether or not there is a avenue for escape. However, the stand-your-ground policy requires that a person defending himself or herself not be engaged in illegal activity. In the present case, if Walton had based his defense on stand-your-ground principles, the fact that he was forbidden to possess a firearm would render his defense meritless. Thus, the State reasons that evidence of Walton's prior crimes and the resulting ban on his possessing a firearm was admissible because that evidence is relevant to whether he was acting unlawfully when he allegedly acted in self-defense.

Although Walton, before the trial, requested immunity from prosecution pursuant to stand-your-ground principles (a request that obviously was denied), and his counsel made mention of the right to stand one's ground during voir dire, Walton did not actually rely on a stand-your-ground defense during the trial. Instead, he disavowed that type of defense in favor of common-law self-defense, which means that he essentially conceded that he had a duty to retreat before using deadly force on Champion and was required to establish that he had no avenue for escape to avoid the altercation. Thus, he has argued, his unlawful possession of a firearm was irrelevant because, under common-law self-

defense, it did not matter if he illegally possessed the gun. Therefore, he asserts that admission of the evidence of his prior crimes that resulted in the firearm ban was unnecessary and was highly prejudicial and improper under Rule 404(b).

The State argued to the trial court that Walton had "opened the door" to evidence of his prior crimes and the resulting firearm ban by claiming self-defense. The following relevant colloquy occurred between the trial court and defense counsel during the trial:

> "THE COURT: All right. This goes directly -- the issue in this case is self-defense. And you're claiming stand your ground. ... I can't think of any other circumstances where information like this [i.e., the prior crimes] would be admissible in court. Under the self-defense statute stand-your-ground subparagraph in there, it speaks of a defendant -- if a -- a defendant must be in a place where they have a right to be and they must be acting lawfully. This goes to the issue of lawful activity.

> "The second page of the [youthful-offender adjudication], ... I ordered ... [Walton] ... not to possess firearms of any kind. So this document will be admitted. It goes to the issue of legal activity, lawful activity, based on your defense of self-defense.

> "[DEFENSE COUNSEL]: And, Judge, I would state again to the court, this right here is -- this is self-defense. I know self-defense and stand your ground are covered by the same statute. But there is also a lot of caselaw as well dealing with self-defense. During this trial, there is, I think, an avenue for self-defense in this. And I think --

"THE COURT: I agree with you. And let me tell you what my view of total self-defense is here. I'm allowing this because it goes to the issue of whether you're entitled to a stand-your-ground instruction, okay? There is no duty to retreat. The caselaw says, as I understand it, that, if there is unlawful activity, then, you still have a self-defense defense. It goes back to the common law.

"And there is, therefore, a duty to retreat based on what the old--what all of the caselaw that you hint at. So it doesn't mean that self-defense is gone. It is -- it goes back to common law duty to retreat. That's my view of the law. And we hadn't gotten there yet in terms of me making a ruling of what jury instructions are going to be given. But I'm just telling you that's my mindset.

"[DEFENSE COUNSEL]: And, Your Honor, I'll just state to the court that having this document put in, its probative value is not (sic) outweighed by prejudicial effects. If there's another way in which -- if the court wanted to make it known to the jury that he was not supposed to carry a gun pursuant to a court order, that could [be done] without putting in these charges of attempted murder, discharging a gun into an occupied building, distribution, robbery, without putting this in to the jury.

"I think this goes too far and goes to a violation of [Walton's] due-process rights and prejudices him and taints this jury against him. So we'll ask again, Your Honor, that [this evidence] not be allowed to go before this jury and this jury not be allowed to see this.

"THE COURT Well, [the documentation of the prior crimes] are admitted.

"....

7

"[DEFENSE COUNSEL]: Your Honor, … [w]ould the court's ruling be the same … if we would agree with the court that [Walton] had a duty to retreat and not go the stand-your-ground route but self-defense route?

"THE COURT: Well, you've already stated at different times in voir dire and opening statement about stand your ground. You know, that -- I believe I'm correct about that. And now, to switch horses in midstream, I'm -- no."

Defense counsel denied that he had referenced stand-your-ground principles during opening statements and claimed that only common-law self-defense had been asserted at that time. He did not, however, deny suggesting to potential jurors during voir dire that Alabama is a stand-your-ground state.

Later, the parties and the trial court revisited the issue of evidence of Walton's prior crimes:

"THE COURT: As to [prior crimes], what does the State have to say?

"[THE STATE]: There is--this morning their objection was that there was no testimony on the record that would open the door to this document. There is testimony on the record. They asked investigators self-defense type questions ….

"They asked the medical examiner about brass knuckles [found on Champion's body]. And they offered in amphetamine for the purpose of arguing that Champion was the aggressor. Then they asked Chuca whether [Walton] appeared to fear for his life.

"These records are absolutely relevant. It changes the law on this. And it should be admitted. ... I would direct the court--there is caselaw that says this limited purpose is admissible. In the words of--it's (indiscernible) versus State. It says:

"(As read) 'The State's policy interest in protecting the confidentiality of youthful offenders' records must yield [to] the public's right to the integrity of the judicial system.'

"And I know that seems dramatic. But they're coming in here saying he has a right to stand his ground. And the fact of the matter is he has an attempted-murder adjudication and had no right to have a gun. So now that they've brought that up, it is absolutely ripe for the jury to know it.

"THE COURT: [Defense counsel]?

"[DEFENSE COUNSEL]: Yes, Your Honor. Totally disagree with several points that the State's made. There was no point in opening arguments or in the course of this trial we've talked about stand your ground. We've talked about, definitely, several matters that go toward self-defense. And we do--and we plan on going down the road on self-defense.

"But as far as a duty to retreat, that deals with stand your ground. And we're not going down that lane. We're going down strictly a lane of self-defense, whether or not this man had to defend himself on April 8, 2017. Not all the other stuff. And not to mention the prejudicial effect of these -- this adjudication, it's just --

"It's no need for it to come in, especially with we're not even going down that realm of stand your ground. We're only going down the realm of self-defense. And his duty to retreat, that's -- we have no problem with that. I mean, that's the route we've been going down this whole time. And that's --

"THE COURT: No, no, no, no. It's not … the route you've been going down this whole time. There was a motion filed in 2018 requesting a motion to dismiss and immunity for stand your ground. And I had a hearing. And I denied it as a matter of law, which preserved it for jury consideration.

"And we get here. And I beg your pardon -- and if the record shows that I'm wrong, then, I'm wrong -- there was a reference to stand your ground in statements made by defense counsel earlier in this case. And then, all of a sudden, we want to change our route with restrictions on the defendant that the defendant knew about, you apparently did not know about in terms of the inability to possess a firearm.

"And now you want to change. You know, I don't know if the law of the case actually applies to this situation. But we did have conversation at the beginning of the trial about inconsistent defenses. And I think I said that, when I heard it or saw it, I'd know it. And I think I see it and hear it now.

"Now, you can argue what you want. And if I am incorrect and if there is a conviction and if I need to be reversed, then, so be it. And thank goodness we have appellate courts that can do that. But we are where we are. It's what's said to this jury has been said to this jury. So continue, [defense counsel].

"[DEFENSE COUNSEL]: Yes, Your Honor. And, Your Honor, I just want to definitely just clarify. I was talking about, from opening arguments going forward, there's been no mention of stand your ground. I think in voir dire -- there were a lot of things that I mentioned in voir dire, some things that won't even come up with this jury.

"THE COURT: Well, same folks sitting out there. It's on the record. I don't know how we distinguish amongst that.

10

"....

"[DEFENSE COUNSEL]: So … through this trial, what we have -- what our theory of the case has been is that [Walton] did try to retreat, as Chuca just testified to that. And, Your Honor, there are going to be other witnesses that are going to testify to that as well.

"THE COURT: And you will have the opportunity for those witnesses to testify about it. And once we get to the … jury instruction, they're going to be charged on the duty to retreat. That is a very valid issue in this case ….

"[DEFENSE COUNSEL]: Yes, Your Honor. And, Your Honor--and so with that, there will be no point to mention whether or not he had -- whether or not -- there's no point -- to prejudice the jury by showing prior convictions of an attempted-murder charge and robbery charge. I think, Judge, that just goes too far. That definitely takes -- that prejudicial effect is high. And it definitely outweighs any probative value to say, hey, he's been convicted of attempted murder, robbery, distribution under youthful offender."

A certified copy of Walton's prior youthful-offender adjudications was admitted for the jury's consideration. In admitting that evidence, the trial court instructed the jury that it could not infer that, based on Walton's prior crimes, he likely committed manslaughter in shooting Champion and that the prior crimes were relevant only to whether Walton rightfully possessed a firearm.

Despite the extensive argument over whether the evidence of Walton's prior crimes was admissible to show that he was acting

11

unlawfully when he shot Champion and therefore was not entitled to rely on a stand-your-ground defense, the trial court ultimately ruled as a matter of law that Walton was indeed acting unlawfully in possessing a gun. Thus, the court declined to charge the jury that there is no duty to retreat before acting in self-defense. Instead, the trial court charged the jury that Walton did indeed have a duty to retreat:

> "A defendant is not justified in using deadly physical force upon another person and a defendant cannot prevail on the issue of self-defense if he reasonably--if it reasonably appears or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating."

Nevertheless, despite appearing to remove altogether from the jury's consideration of the whether Walton was acting unlawfully and therefore had a duty to retreat, the trial court also reminded the jury of the previous instruction directing the jury that it could not consider Walton's prior crimes for any purpose other than to show that he illegally possessed the gun he used to shoot Champion. But at this stage of the trial, Walton's illegal possession of the gun was irrelevant and not a fact for the jury's consideration.

Rule 404(b)(1) provides that evidence of a person's other crimes, wrongs, or acts cannot be admitted "to prove the character of a person in

order to show action in conformity therewith." Such evidence can, however, be considered for "other purposes." Rule 404(b)(2). Of course, if the evidence is offered for "other purposes," it still must be "relevant" to be admissible. Rule 402, Ala. R. Evid. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Ala. R. Evid. Even if technically relevant, evidence of prior crimes should not be admitted if its probative value does not outweigh its prejudicial effects:

> "'Judicial inquiry does not end with a determination that the evidence of another crime is relevant and probative of a necessary element of the charged offense. It does not suffice simply to see if the evidence is capable of being fitted within an exception to the rule. Rather, a balancing test must be applied. The evidence of another similar crime must not only be relevant, it must also be reasonably necessary to the government's case, and it must be plain, clear, and conclusive, before its probative value will be held to outweigh its potential prejudicial effects.'"

Averette v. State, 469 So. 2d 1371, 1374 (Ala. Crim. App. 1985) (quoting United States v. Turquitt, 557 F.2d 464, 468-69 (5th Cir. 1977)).

It is doubtful whether evidence of Walton's prior crimes was relevant at all, because that evidence did not seem to prove "any fact that is of consequence" to the resolution of the reckless-manslaughter case.

13

Rule 401. The only issue that has been identified as possibly being affected by the fact that Walton had committed prior crimes was whether he was acting unlawfully, and therefore had a duty to retreat, when he allegedly shot Champion. But the duty to retreat simply was not an issue for the jury in this case. The concept of the right to stand one's ground was mentioned to potential jurors during voir dire, but, as Judge Cole noted in his dissent below, Walton's counsel stated during voir dire only that "'[t]his is a stand your ground state, meaning you don't even have to run, you can stand your ground; okay? Anybody got a problem with that? Anybody got a problem with the right to defend yourself, to defend yourself with a gun?'" Walton v. State, ___ So. 3d at ___ (Cole, J., dissenting). Walton's counsel made no mention of stand-your-ground principles during opening statements or the remainder of the trial. And Walton specifically disavowed any intent to rely on a stand-your-ground defense. Indeed, consistent with that position, the trial court refused to instruct the jury on stand-your-ground principles and specifically instructed the jury that Walton had a duty to retreat. Such an instruction seems to confirm that evidence of Walton's prior crimes and the resulting firearm ban was simply irrelevant to the issues submitted

14

to the jury. We can find nothing to justify the admission of any evidence of Walton's prior crimes because his illegal possession of the gun was directly conceded directly by the defense and indirectly accepted by the judge's instructions to the jury.

Moreover, even if Walton "opened the door" to this evidence during voir dire, there was no need to inform the jury of the actual details of the prior crimes that resulted in a ban on Walton possessing a firearm. The trial court could have simply instructed the jury that Walton had illegally possessed the firearm and that he was not entitled to rely on stand-your-ground principles, which was a concession Walton actually made. There was no need to provide the jury details about Walton's prior crimes, and the prejudicial effect of those details outweighed any possible relevance and probative value.

> " 'The basis for the rule [precluding the admission of evidence of other crimes] lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.' "

Ex parte Arthur, 472 So. 2d 665, 668 (Ala. 1985) (quoting Charles W. Gamble, McElroy's Alabama Evidence § 69.01(1) (3d ed. 1977)). As Judge Cole noted in dissent below, "[t]he State repeatedly reminded the jury

[during closing arguments] about the nature of Walton's prior offenses."

___ So. 3d at ___ (Cole, J., dissenting). Judge Cole concluded as follows

regarding the prejudicial effect of the evidence:

> "The evidence of Walton's prior violent acts, which were similar to the offense charged in this case, had an 'irreversible impact' on the jury and should not have been admitted into evidence. This adverse impact is particularly likely because even the State's evidence supported Walton's common-law claim of self-defense. The State's witnesses testified that Walton was essentially forced to leave by a large group, that he was 'encircled' and 'essentially trapped' at the bottom of a hill, that the group was 'trying to hurt [Walton and Chuca],' that Chuca 'fainted,' and that Walton was tackled and '[t]hat's when the gunshot went off.' Even the investigator testified that the gun was fired 'close to the ground.' Thus, an overwhelming amount of evidence was presented, by the State no less, that supported Walton's argument that he acted in self-defense. This evidence was likely overcome by the details of Walton's youthful-offender adjudications."

Walton v. State ___ So. 3d at ___ (Cole, J., dissenting).

The trial court acted outside its discretion by admitting evidence of

Walton's prior crimes. That evidence was unnecessary, and the

introduction of the details of those prior crimes by the State served only

to prejudice the jury because there was no fact that needed bolstering by

this supporting information. Accordingly, we reverse the judgment of the

16

Court of Criminal Appeals and remand the matter for further proceedings consistent with this opinion.[2]

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Wise, Bryan, Mendheim, Cook, and Lewis, JJ., concur.

McCool, J., recuses himself.

---

[2]In its unpublished memorandum decision, the Court of Criminal Appeals concluded that, "at the time the [prior] adjudications were admitted, it appeared that whether Walton was entitled to stand his ground or had a duty to retreat was going to be a factual issue for the jury to resolve." (Emphasis omitted.) In other words, the Court of Criminal Appeals judged the correctness of the trial court's admission of the prior-crimes evidence based on the circumstances before the trial court at the time of the admission of the evidence. But the fact that Walton was not legally allowed to possess a firearm was known to the trial court and the parties at the time the evidence was admitted, and defense counsel had already disavowed any intent to rely on stand-your-ground principles and had essentially conceded that Walton had a duty to retreat. In other words, as Judge Cole put it in his dissent, "[t]his issue was resolved before the exhibit that contained Walton's youthful-offender adjudications was submitted to the jury." Walton v. State, ___ So. 3d at ___ (Cole, J., dissenting).